The next matter, number 22-1166, Douglas J. Bache v. Town of Boxborough et al. At this time, Attorney Hoffman, please introduce yourself on the record to begin. Good morning to the panel. Attorney Hoffman for the appellant, Douglas Bache, and the original plaintiff in the matter. The court's being asked in this place to deal with a situation that will help assist, delineate the legal purview of law enforcement. I want to say at the outset that sometimes we understand that it is imperative that the legal reach of law enforcement be expanded. But, excuse me, our position is that this is not such a case. Rather, I would respectfully suggest this case represents what is the outer wall, the point where law enforcement must be reined in. The officer in question was not given a suggestion by his chief or other superior. There was a court order that was issued and it was very specific. Well, the court order wasn't very specific. The court order said that the ex could take small items. How was the officer supposed to interpret what the court order meant without any additional specificity? Well, the court order referred to clothes and shoes. And other small items. It did say and other small items. That could be a toaster. That could be a chair. But in this case, furniture was removed. Literally, the court order was entirely disregarded. And I believe that that's the point. That's the point that we're making. Large furniture was taken. So doesn't that just mean your client could move for contempt against her? But a police officer can't stand there. What was he supposed to do, arrest her? Or grab it out of her hands? Well, what he wasn't supposed to do was assist her in carrying these things out. The point that we're trying to make is that there was literally absolutely no attempt was made to follow the court order. I don't recall there being a claim that he assisted her in carrying things out. There is a claim. And so you're saying that's the violation, is him actually carrying stuff? No. We're comparing this case to... Just focus on that question first. Are you saying he picked up something and carried it out to the coast? He did pick up something and carry it out. And what was it he carried out? He assisted carry... She brought... She went through the home and made a pile of belongings. He helped her carry out many of the items that were in the home. Did he carry out anything that wasn't a small item? Yes, he did. And where in the record would we find that? Well, it states in the record that he assisted her in carrying out the items. But it doesn't say which items. No, it doesn't say which items. The officer himself specifically carried out. And I get your point on that. But the record tells me... If he only carried out small items... I'm sorry. If he only carried out small items, then he's not in violation of anything. Fair enough. But I just want to be clear that our position is that the court order itself was ignored. Furniture is clearly not a small item. When you say was ignored, you're speaking in the passive. And okay, she ignored the court order. Assume... I'm not saying she did, but assume she did. So what? How does that give you a claim against the officer? I mean, suppose she went in and took his car. And the officer didn't arrest her. Are you saying the officer would be liable? We're saying that the officer's pure point in being there was administrative. He was there to enforce that court order. There's nothing in the court order that authorizes him to enforce the order without an adjudication that the order is being breached, much less to determine what's small and what's not small. Generally, those officers are there to keep the peace. I can personally attest to the fact that the officer's point in being there was strategic. We knew that the tenant had no money, had no job. We knew that the tenant in the past had stolen items of the property owner, Mr. Bage. Our concern was that she would come in and she would literally begin to help herself to his items. So as part of the stipulation... A more specific court order would have been appropriate then, with a listing of what she was permitted to take specifically, and not have a provision that said other small items, which requires somebody to interpret what small means. It is true. It did say other small items. And clearly, there's going to be some discretion involved in determining what that is. But again, the point is two dates. The court provision was very clear. It allowed two dates for Ms. Oaks, the previous tenant, to come and retrieve her belongings. And the first one referred to clothes, shoes, and other small items. And a small time was allotted for that. The second date was never necessary, because Officer Gath literally allowed her to take everything, again, including furniture. I mean, these are things that I would argue clearly were not small items. And again, our position is that Gath may... But you're saying he was to adjudicate that issue on the spot, rather than your client file a motion for contempt. What we're saying is that clearly, there would be some discretion involved there for Officer Gath on the issue of what would be a small item. But what we're saying is that Officer Gath, he literally made no attempt. He ignored the court order completely. He made absolutely no attempt to delineate. I don't see... This is where you're confusing. I don't see where he was charged with adjudicating on behalf of the court what was being violated and what was not. It seemed to me there was a provision that there would be a law enforcement officer there. Presumably, it's a type of domestic situation where you want to make sure that violence didn't break out or something like that. And I suppose he would be a witness to what was taken. But you want to go further. You want to say that your client had a constitutional right to have him do what the judge would do, which is decide if what she took was allowed for by the order or not. Well, no, I don't think I'm being clear. We're not saying that there wouldn't be some, again, discretion on the part of Officer Gath. But what we're saying is that, number one, the whole purpose for having the officer there was, again, this concern that the tenant would simply help herself to his belongings. He had already suffered... There's nothing in the court order that said what the purpose, the officer's purpose was to be. Right, but I believe it is in the record. And I can tell you, because I'm the one who wrote the order at the housing court, I dictated it, and this was our concern. And what I'm saying... So are you testifying now? No. Well, then why should we pay any attention to what you just said? It's not in the record. The officer wasn't at the court with you? The officer wasn't at the court to get your understanding of what the order meant? The officer had to, I guess, figure out what other small items meant. Well, again, but the officer... And I get your point. I don't mean to get hung up on the small items issue, which I feel like we're doing. No attempt was made to follow the order. That's the point. She helped herself to... What I'm about to say is going to seem a bit harsh, but I think it has to be said. I have, frankly, seldom seen a case where I think there was such a disconnect between what happened and the lawsuit that ensues. You have this multi-count complaint raising constitutional issues, claims under the Massachusetts Civil Rights Act, Tort Claims Act, all these intentional afflictions of emotions. I mean, this seems to be driven by a lack of common sense. I mean, as Judge Kayada pointed out earlier in the argument, if she wasn't complying with the order, maybe you could have sought contempt. You could have gone back to the court that issued the order in the first place. As even the officer said, perhaps you could have sued Ms. Oaks. But to create this elaborate 10-count complaint out of what happened here seems very, frankly, very, very difficult to justify. I'm not minimizing how strongly the parties feel about this, but to file a complaint like this with all of these counts, which are, in my view, utterly groundless, I just don't understand that. It doesn't seem to serve your client very well to raise hopes that there could be some relief come out of something like this. I've been trying to figure out why this suit was filed, and I think you just answered it, because you don't think Ms. Oaks can afford any relief. So this is an attempt to try to get some financial relief from the officer or from the town. But I don't think that's an appropriate motive to do this. Well, if I could address that. Please. Sure. The situation in this case, Mr. Bache knew the problem that he was going to face. He knew that his property would be taken from him. And so the point is, is that Mr. Bache, through counsel, sought to involve the courts to prevent that, and did what he could do, get a court order. And then when the time came for that court order to be exercised, at Mr. Bache's demand, it was Mr. Bache who asked that the officer be there. The officer made no attempt to follow that court order. Counsel, you keep missing the point. Your court order wasn't explicit. If your court order had said clothes and jewelry and nothing else, then maybe. Once again, you're asking the officer to adjudicate what other small items mean. Again, I would argue that it goes beyond that. And small, I would suggest, is in the eye of the beholder. But furniture, I would put to the court, is surely not small. Other large items that were taken from the home were clearly not small. All right. Thank you. And furthermore, there was no- Excuse me, counselor. Any more questions? Thank you. Thank you. At this time, Attorney Amos, please introduce yourself on the record to begin. Good morning, Your Honors. May it please the Court, Justin Amos on behalf of the Town of Boxborough and Officer Philip Gath. To drive right to the heart of the issue, as I believe both Judge Thompson and Judge Kayada have indicated, the court order at issue here did not obligate Officer Gath or any other member of the Boxborough Police Department to make a porch-side adjudication of what types of items constituted a small item or article of clothing or a shoe. It required, as Judge Thompson noted, only that an officer be present to supervise, which essentially was to keep the peace, to ensure that in a situation where you had two individuals who were former romantic partners, who were former roommates, wouldn't come to any type of violence when there were items being removed from the house that purportedly belonged to Ms. Oaks. And to Judge Thompson's point, this was a stipulated agreement submitted by my friend on the other side, and I believe Ms. Oaks was unrepresented in the housing court. But it was a stipulated agreement by the parties that was converted into a court order. If it was true that Mr. Bates was so concerned that particular items would have been absconded by Ms. Oaks from the property, it would behoove Mr. Bates to have asked the court, or at least in the proposed order, submitted a very specific delineation of what items may be removed. It's a little bit beside the point, but there is no order, there's no direction within the court order that the officer has to determine on-site or that he has any authority to determine on-site. He's called only to supervise the exchange. And driving us to Section 1983 claim, I think there's multiple layers of problems with the case, starting first with the fact that there is no basis to impose Monell liability. There's no allegation of an official custom policy or practice pursuant to which Officer Gath deprived the plaintiff of any constitutional right. And I would squarely address Castle Rock v. Gonzales. There is no protected property interest in the enforcement of a court order, especially where the facts in Castle Rock were substantially more egregious than the facts of this case where there were three minor children who ended up murdered because the Castle Rock Police Department didn't enforce a restraining order. I think it would strain cajolity to hold that Ms. Oaks removing a toaster oven from the apartment gives rise to a due process claim where the murder of three children does not. And to address that, as my brother had said during argument this morning, that furniture was removed from the apartment, that's not alleged in the complaint at all. What was alleged is that Ms. Oaks removed a ring, a toothbrush, a lamp, a laundry basket, a toaster oven, I believe a vacuum, none of which I would suggest is furniture, all of which could be classified as small items. I'll briefly touch on the Fifth Amendment takings claim, which I think is without merit. It's a possessory taking at best, and only if there was confiscation by the individual officer or an occupation of the property for public use, neither of which occurred here. There's no allegation that Officer Gaff took any of the property himself, retained any of the property, and there's no allegation in the complaint that he occupied Mr. Bage's apartment for any period of time, let alone that he'd occupied the property for public use. I'm happy to answer any specific questions that the Court may have, but I think as far as lack of Monell liability, there's no protected property interest to serve as a constitutional deprivation. And even if there were some grounds to believe that there's a constitutional deprivation here, Officer Gaff is immune under qualified immunity, particularly in light of Castle Rock, as well as the Ford v. Count of Grafton case from the Massachusetts Appeals Court, which held as a matter of substantive State law, there is no constitutionally protected interest in the enforcement of restraining order, which addresses some of the concerns that Justice Souter had addressed in the concurrence in Castle Rock. But if there are no further questions, we would rest on our brief as to the State law claims. Thank you, Mr. Ames. Thank you, Your Honor.